**In re David L. SHURTZ, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 09–BG–617.**

District of Columbia Court of Appeals.

Argued July 12, 2011.

Decided Aug. 4, 2011.

George R. Clark, Washington, DC, for respondent.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Joseph C. Perry, Senior Staff Attorney, were on the brief, for the Office of Bar Counsel.

Before GLICKMAN and FISHER, Associate Judges, and NEWMAN, Senior Judge.

FISHER, Associate Judge:

Following an evidentiary hearing, the Circuit Court for Arlington County, Virginia, found, by clear and convincing evidence, that respondent had violated Rules 1.4(b) and (c), Rule 1.8(e), and Rules 8.4(b) and (c) of the Virginia Rules of Professional Conduct. We will not repeat the details of respondent's misconduct, which are described in the Circuit Court's Memorandum Order, attached to this opinion as an Appendix. The Circuit Court suspended respondent from the practice of law in Virginia for eighteen months without apportioning the sanction among the various violations it found to have been proven. That decision was affirmed by the Su-

---

19. *United States v. Hurt,* 381 U.S.App.D.C. 259, 263, 527 F.3d 1347, 1351 (2008).

preme Court of Virginia, and the suspension became effective on June 25, 2010.

On September 29, 2010, this Court suspended respondent from the practice of law in the District of Columbia pending the final disposition of this reciprocal discipline proceeding. We also ordered respondent to show cause why he should not be suspended in this jurisdiction for an identical period of eighteen months. D.C. Bar R. XI, § 11(d).

Under our rules, "[r]eciprocal discipline may be imposed whenever an attorney has been disbarred, suspended, or placed on probation by another disciplining court." D.C. Bar R. XI, § 11(c).

> Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
>
> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
>
> (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.
>
> Unless there is a finding by the Court under (1), (2), or (5) of this subsection, a final determination by another disciplining court that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

*Id.* Moreover, "[i]f the Court decides that a referral to the Board [on Professional Responsibility] is unnecessary, it shall impose identical discipline unless the attorney demonstrates by clear and convincing evidence, or the Court finds on the face of the record, that one or more of the grounds set forth in subsection (c) of this section exists." D.C. Bar R. XI, § 11(e). Invoking subsections (c)(4) and (c)(5), respondent asserts that his loans to his client would not constitute misconduct in the District of Columbia. He argues, therefore, that he should only be suspended in this jurisdiction for a period of six months.[1] He does not attack the *Virginia* Court's findings with respect to the *other* violations.

It is true that the relevant rules respecting financial assistance to a client are different in Virginia and the District of Columbia. Virginia prohibits a lawyer from giving financial assistance except for "court costs and expenses of litigation."[2] The District of Columbia takes a more tolerant approach, authorizing a lawyer to provide "[o]ther financial assistance which

---

1. At oral argument, respondent's counsel conceded that a suspension of one year might be appropriate.

2. Rule 1.8(e) of the Virginia Rules of Professional Conduct provides:
   (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
   (1) a lawyer may advance court costs and expenses of litigation, provided the client remains ultimately liable for such costs and expenses; and
   (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

is reasonably necessary to permit the client to institute or maintain the litigation or administrative proceeding." [3] Although respondent practiced primarily in the Commonwealth of Virginia, and his office was located there, he asserts that this aspect of his conduct had its "predominant effect" in the District of Columbia because his client lived here and the automobile accident giving rise to her personal injury claim occurred here. Therefore, he argues, the District of Columbia rule should govern our decision. *See* D.C. R. Prof. Cond. 8.5 (Disciplinary authority; choice of law).

We need not decide which jurisdiction's rule governs in these circumstances or whether respondent's conduct would violate the District of Columbia rule [4] because, even if we disregard the violation of Rule 1.8 found by the Virginia Court, respondent has not shown by clear and convincing evidence that the other "misconduct established warrants substantially different discipline in the District of Columbia." D.C. Bar R. XI, § 11(c)(4).

The other violations found by the disciplining court in Virginia (and not contested by respondent here) included: ignoring calls from his client, failing to update her on the status of her case, and failing to inform her of settlement offers; signing his client's name to an authorization to release medical records; accepting a settlement without his client's authorization; signing her name to a settlement agreement; instructing two of his employees to sign as witnesses to the client's signature; and notarizing the client's signature, falsely attesting that she had "personally appeared" before him and had executed the document. Respondent presented the signed agreement to the insurance company and endorsed the forthcoming settlement check, signing his own name and that of his client.

Were this misconduct before us as a matter of original discipline, it is far from clear that a suspension for eighteen months would be an adequate sanction. *See, e.g., In re Kline*, 11 A.3d 261 (D.C. 2011) (rejecting Board's recommendation of an eighteen-month suspension, with nine months stayed, instead suspending attor-

---

**3.** Rule 1.8(d) of the District of Columbia Rules of Professional Conduct provides:

(d) While representing a client in connection with contemplated or pending litigation or administrative proceedings, a lawyer shall not advance or guarantee financial assistance to the client, except that a lawyer may pay or otherwise provide:

(1) The expenses of litigation or administrative proceedings, including court costs, expenses of investigation, expenses of medical examination, costs of obtaining and presenting evidence; and

(2) Other financial assistance which is reasonably necessary to permit the client to institute or maintain the litigation or administrative proceeding.

Comment [9] to this rule explains that:

a lawyer may also pay certain expenses of a client that are not litigation expenses. Thus, under Rule 1.8(d), a lawyer may pay medical or living expenses of a client to the extent necessary to permit the client to con-

tinue the litigation. The payment of these additional expenses is limited to those strictly necessary to sustain the client during the litigation, such as medical expenses and minimum living expenses. The purpose of permitting such payments is to avoid situations in which a client is compelled by exigent financial circumstances to settle a claim on unfavorable terms in order to receive the immediate proceeds of settlement.

**4.** Indeed, we would need to know more details about respondent's loans to his client before we could decide whether they were authorized by Rule 1.8(d) of the District of Columbia Rules of Professional Conduct. The Virginia Court understandably did not explore the circumstances surrounding those loans because they were strictly prohibited under the Virginia rule.

ney for three years). Respondent Kline, among other things, negotiated a settlement without his client's consent, forged his client's signature on a settlement agreement containing the terms he had negotiated, paid the adverse parties $50,000 of his own funds, and presented the forged agreement to them as a valid settlement agreement. *Id.* at 262. We concluded "that an eighteen-month suspension understates the gravity of respondent's misconduct. . . ." *Id.* at 265.

Although Mr. Kline's conduct included misappropriation of client funds, which we concluded "f[e]ll on the side of negligence rather than recklessness[,]" *id.* at 264, we opined that "the ordinary sanction for negligent misappropriation would not exceed suspension for six months. . . ." *Id.* at 265. Thus, the bulk of our three-year suspension was based on his acts of forgery, dishonesty, and deceit. In this sense, Kline's misconduct is comparable to respondent's. Respondent forged his client's signature, induced his employees to bear false witness, falsely notarized his client's signature, and presented the falsely executed settlement agreement to the insurance company as if it were genuine. This is, to say the least, very serious misconduct.

Nevertheless, this is a matter of reciprocal discipline, and Bar Counsel has not asked us to impose discipline greater than that imposed in Virginia. Moreover, our rules presume that "identical discipline" will be imposed unless (as relevant here) respondent demonstrates, by clear and convincing evidence, that "[t]he misconduct established warrants substantially different discipline in the District of Columbia[.]" D.C. Bar R. XI, §§ 11(c)(4), 11(e).

Even if we set aside respondent's financial assistance to his client, the Virginia Court found violations of Rules 1.4(b) and (c) and Rules 8.4(b) and (c), and we are obliged to take that professional misconduct as "conclusively establish[ed]." D.C. Bar R. XI, § 11(c). Respondent has not carried his burden of demonstrating that this misconduct "warrants substantially different discipline" than a suspension of eighteen months. *See, e.g., In re Peartree,* 672 A.2d 574 (D.C.1996) (suspending attorney for one year in reciprocal matter for failing to communicate with client, including failure to inform client of settlement offer and counterclaim); *Kline,* 11 A.3d at 266–67 (discussing disciplinary cases dealing with forgery and dishonesty); *In re Guberman,* 978 A.2d 200 (D.C.2009) (imposing eighteen-month suspension as non-identical reciprocal discipline where attorney created false pleadings with forged file stamps and placed them in firm's file); [5] *In re Pennington,* 921 A.2d 135 (D.C.2007) (two-year suspension with fitness requirement imposed as non-identical reciprocal discipline where attorney falsely told clients that case had been settled, created a fictitious Statement of Settlement, and paid them from her own funds).

Respondent is hereby suspended from the practice of law in the District of Columbia for a period of eighteen months, *nunc pro tunc* to June 25, 2010.[6]

*So ordered.*

---

**5.** In *Guberman,* we cited numerous decisions where we had imposed sanctions ranging from a suspension of thirty days to a suspension of three years for comparable conduct. 978 A.2d at 207 n. 7.

**6.** Respondent filed affidavits to comply with D.C. Bar Rule XI, § 14, and *In re Goldberg,* 460 A.2d 982, 985 (D.C.1983). He asserts, and Bar Counsel agrees, that any final discipline imposed in this matter should be deemed to run, *nunc pro tunc,* from June 25, 2010, the effective date of the discipline in Virginia.

APPENDIX

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE COUNTY OF ARLINGTON

IN THE MATTER OF DAVID LOREN SHURTZ, ESQUIRE

VSB DOCKET NUMBER 07–041–1154

### MEMORANDUM ORDER

ON THE 26th day of March, 2009, this matter came before the Three–Judge Court designated on the 23rd day of February, 2009, by Order of the Chief Justice of the Supreme Court of Virginia, pursuant to § 54.1–3935 of the Code of Virginia (1950 as amended ), consisting of the Honorable William H. Ledbetter, Jr., Retired Judge of the Fifteenth Judicial Circuit, the Honorable John J. McGrath, Retired Judge of the Twenty–Sixth Judicial Circuit, and the Honorable Lisa Bondareff Kemler, Judge of the Eighteenth Judicial Circuit and Chief Judge of the Three–Judge Court.

Kathleen M. Uston, Assistant Bar Counsel, appeared on behalf of the Virginia State Bar, and the Respondent, David Loren Shurtz, personally appeared represented by counsel, Michael L. Rigsby, Esquire.

THEREAFTER, the hearing was conducted upon the Rule to Show Cause issued against the Respondent, which directed him to appear and to show cause why his license to practice law in the Commonwealth of Virginia should not be suspended or revoked or why he should not be otherwise sanctioned in accordance with Rules of Court, Part Six, Section IV, Paragraph 13;

FOLLOWING presentation of the Bar's evidence, which included the testimony of two (2) witnesses and nineteen (19) documentary exhibits, which were received by the Court on motion of the Bar, without objection, and following presentation of the Respondent's evidence, which included the testimony of two (2) witnesses including the Respondent and documentary exhibits, which were received by the Court on motion of the Respondent without objection, and upon argument of counsel, the Three–Judge Court retired to deliberate and thereafter returned and announced that it had found, by clear and convincing evidence, the following:

1. At all times relevant hereto, the Respondent, David Loren Shurtz, Esquire (hereinafter "the Respondent"), has been an attorney licensed to practice law in the Commonwealth of Virginia. The Respondent is also licensed in the District of Columbia, and he testified that he principally practices in Virginia.

2. On December 16, 2005, Vandora Chappelle was a passenger in an automobile involved in an accident in Washington, D.C. On December 18, 2005, an individual, who identified himself as Antoine Washington, appeared at Ms. Chappelle's home to discuss the accident with her, and suggested that she hire the Respondent to represent her interests. During this meeting, Mr. Washington presented Ms. Chappelle with a Contingency Fee Agreement on the Respondent's letterhead which Ms. Chappelle signed at that time, thereby retaining the Respondent to represent her in her personal injury case. Prior to signing this Agreement, Ms. Chappelle had never met the Respondent, nor had she had the opportunity to review the terms of the Agreement with him.

3. Soon after Ms. Chappelle hired the Respondent, she informed him that she was having trouble with her car, needed funds for a security deposit and for her car insurance, and she asked him for financial assistance. The Respondent agreed to

loan Ms. Chappelle funds eventually totaling $1,671.00. Two of those loans were made in $600.00 cash increments that Ms. Chappelle traveled to Respondent's office in Arlington, Virginia to retrieve.

4. Following her receipt of these funds, Ms. Chappelle thereafter attempted to contact the Respondent to inquire regarding the status of her case, calling him many times. The Respondent, however, ignored her calls, and failed to update her on the status of her case, including failing to inform her of settlement offers made by the defendant's insurance carrier, Banker's Independent Insurance Company (hereinafter "Banker's.")

5. During the course of the representation, the Respondent signed Ms. Chappelle's name to an Authorization to Release/Disclose Protected Health Information in order to obtain her medical records.

6. On June 23, 2006, the Respondent accepted a settlement offer from Banker's in the amount of $16,000.00 on Ms. Chappelle's behalf. Banker's transmitted a Release to the Respondent by facsimile with instructions that "upon receipt of a properly executed Release," the settlement funds would be forwarded to the Respondent. On that date, the Respondent signed Ms. Chappelle's name to the Release from Banker's, instructed two of his employees to witness the signature as being that of Ms. Chappelle, and then himself notarized the signature, attesting in the notary clause that Ms. Chappelle had "personally appeared" before him as a Notary Public and executed the document. The Respondent then returned the signed, witnessed, notarized Release to Banker's without informing that company that he, in fact, had signed his client's name to the Release.

7. The Respondent also admitted that he accepted the $16,000.00 from Banker's without first obtaining Ms. Chappelle's authorization to do so.

8. The Respondent cited the following language from his Contingent Fee Agreement as his authority for the above described conduct:

Client gives Mr. Shurtz full power and authority to prepared (*sic*), endorse, execute and/or file on client's behalf all pleading (*sic*), contracts, settlements, compromises, released (*sic*), verifications and orders that, in Mr. Shurtz' opinion, is (*sic*) necessary in connection with this case.

9. In August of 2006, the Respondent received a check from Banker's, made out to both Ms. Chappelle and the Respondent. The Respondent testified that he endorsed the check with both his own name and Ms. Chappelle's and deposited it into his trust account. The Respondent also drew up a settlement statement which indicated that he would recover the $1,671.00 he had loaned to Ms. Chappelle from the settlement funds. However, Ms. Chappelle refused to accept the settlement. She fired the Respondent and hired a new attorney, Louis Fireison, Esquire, who filed this complaint with the Bar in October of 2006.

10. Mr. Fireison contacted Banker's regarding this matter but the company denied any further liability in the case due to it's receipt of a signed, notarized Release bearing what Banker's understood to be Ms. Chappelle's signature.

11. Mr. Fireison thereafter filed suit in the D.C. Superior Court, arguing in motions filed in the case that the signature was a forgery and therefore void.

12. Ultimately, on April 18, 2008, Mr. Fireison negotiated a settlement of the case with Banker's for the sum of

$22,000.00, and Banker's counsel transmitted a check to Mr. Fireison in this amount. The Respondent had contributed $6,000.00 of his own funds to the settlement, in addition to returning the original $16,000 he held in trust directly to Banker's counsel.

THE THREE–JUDGE COURT thereupon stated its finding that the Virginia State Bar had proven, by clear and convincing evidence, that the above described conduct by the Respondent violated the following provisions of the Rules of Professional Conduct:

RULE 1.4   Communication

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(c) A lawyer shall inform the client of facts pertinent to the matter and of communications from another party that may significantly affect settlement or resolution of the matter.

RULE 1.8   Conflict of Interest: Prohibited Transactions

(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) a lawyer may advance court costs and expenses of litigation, provided the client remains ultimately liable for such costs and expenses; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

RULE 8.4   Misconduct

It is professional misconduct for a lawyer to:

(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law[.]

THEREAFTER, the Bar and the Respondent presented argument regarding the sanction to be imposed upon the Respondent for the ethical misconduct found by the Three–Judge Court. The members of the Three–Judge Court deliberated and announced the decision that the Respondent's license to practice law in the Commonwealth of Virginia should be suspended for a period of eighteen (18) months, effective April 16, 2009.

AT THE CONCLUSION of the proceedings on the 26th day of March, 2009, the Three–Judge Court entered a Summary Order suspending Respondent's license to practice law in the Commonwealth of Virginia for a period of eighteen (18) months, effective April 16, 2009; accordingly, it is, therefore

ORDERED, that Respondent's license to practice law in the Commonwealth of Virginia shall be suspended for a period of eighteen (18) months, effective April 16, 2009, on the basis of the violations of the Rule of Professional Conduct set forth above; and it is further

ORDERED, that pursuant to Part Six, Section IV, Paragraph 13.B.8.c of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System shall assess costs against the Respondent; and it is further

ORDERED that four (4) copies of this Order be certified by the Clerk of the Circuit Court of Arlington County, Virginia, and be thereafter mailed by said Clerk to the Clerk of the Disciplinary System of

the Virginia State Bar at 707 East Main Street, Suite 1500, Richmond, Virginia 23219–2800, for further service upon the Respondent and Bar Counsel consistent with the rules and procedures governing the Virginia State Bar Disciplinary System.

THIS ORDER IS EFFECTIVE *NUNC PRO TUNC* MARCH 26, 2009. AND THIS ORDER IS FINAL.

Entered this *29th* day of *April,* 2009.

FOR THE THREE–JUDGE COURT:

By:

/s/ Lisa Bondareff Kemler

LISA BONDAREFF KEMLER
Circuit Judge and
Chief Judge of the Three–Judge Court